**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**ARCHITECTURAL CONTRACTORS, INC.**
**and THE CINCINNATI INSURANCE COMPANY, INC.**                                    **PLAINTIFFS**

V.                              CASE NO.  5:13-CV-05179

**SCHILLI TRANSPORTATION SERVICES, INC.**                                         **DEFENDANT**


**MEMORANDUM OPINION AND ORDER**

On the 1st day of December, 2014, this matter came on for a bench trial before the Court.  During the one-day bench trial, the Court heard testimony from witnesses and received exhibits into evidence.  Thereafter the Court ruled in Plaintiffs' favor.  This written Memorandum Opinion and Order is intended to supplement the Court's ruling from the bench; however, to the extent this Order contradicts the Court's ruling from the bench, this Order shall control.

**I. BACKGROUND**

Plaintiffs Architectural Contractors, Inc. ("ACI") and The Cincinnati Insurance Company, Inc. ("CIC") filed this action on July 23, 2013 in the Circuit Court of Washington County, Arkansas.  On August 22, 2013, Defendant Schilli Transportation Services, Inc. ("Schilli") removed the matter to this Court pursuant to federal question jurisdiction under 28 U.S.C. § 1331.  ACI and CIC allege that certain building materials were damaged during transport by Schilli to ACI's job site in Springdale, Arkansas.

ACI is an Arkansas company that provides commercial design and construction services.  CIC is its insurer.  Schilli is an interstate motor vehicle carrier engaged in the transportation of freight.  On May 31, 2011, ACI ordered building materials from its

supplier, BlueScope Buildings North America ("BlueScope").[1] The building materials were to be used in the construction of a 31,000 square foot commercial building ACI was constructing for its customer, the Arkansas and Missouri Railroad ("A&M"). BlueScope arranged shipment of the materials to ACI on six trucks, of which Schilli was the carrier for two loads. The bill of lading associated with the third shipment, the load at issue ("Load Three"), named ACI as the consignee. Damage to certain "wall panels" was discovered on Load Three shortly after arrival to the job site on August 29, 2011.

Due to contractual deadlines with A&M, ACI installed the damaged panels so that it could pour the concrete floor before winter, and subsequently replaced the damaged panels with new panels. ACI made an insurance claim with CIC, which was paid in the approximate sum of $14,609.00. In this suit ACI, and CIC as subrogee, seek damages from Schilli pursuant to the Carmack Amendment of the Interstate Commerce Act, 49 U.S.C. §14706. Plaintiffs seek to recover the cost and expense to remove the damaged panels and install replacement panels, to include materials, labor, equipment, overhead, and profit.

Prior to trial, the Parties submitted cross Motions for Summary Judgment. Schilli argued that Plaintiffs' claim was barred by a nine-month claim limitation set forth in a transportation agreement between Schilli and BlueScope. Plaintiffs also sought summary judgment, arguing that the Carmack Amendment applies strict liability to carriers, and there was no geninue dispute that the wall panels in question were damaged during transport.

---

[1] BlueScope purchased Varco-Pruden, the original supplier of the panels. The shipper will be referred to as BlueScope throughout this Order.

The Court denied both parties' Motions for Summary Judgment in its August 5, 2014 Order (Doc. 28), finding that in order to bind ACI to the nine-month limitations period negotiated between Schilli and BlueScope, there must be some reference to the limitations period—or at the very least to the Agreement that contained the limitations period—on the face of the bill of lading. The Court reasoned that nothing in the record suggested that ACI received actual notice of the nine-month limitations period, and it was unclear whether ACI received constructive notice of the Agreement and/or the limitations period. As to Plaintiffs' request for summary judgment, the Court found that questions of material fact remained as to whether the goods were provided to Schilli in good condition and whether they were delivered to ACI in damaged condition.

Prior to trial, the Parties filed Stipulated Facts and Agreed Basis of Applicable Law (Doc. 33). At the beginning of trial, the parties agreed that the substantive issues to be tried were as follows:

> (1) whether materials were in good condition upon receipt by Schilli;
> 
> (2) whether materials arrived in damaged condition at ACI's job site;
> 
> (3) whether ACI had either actual or constructive knowledge of the nine-month claim limitation that existed in the transportation agreement between BlueScope and Schilli; and
> 
> (4) the extent of ACI's damages, and whether all of the claimed damages would have been foreseeable to Schilli (i.e., that it would have been foreseeable to Schilli that damaged panels would have been installed as a temporary measure until replaced with new panels).

Plaintiffs called three witnesses: John Berryman, the president and owner of ACI, who appeared in person; Douglas Edwards, Schilli's driver for Load Three; and Jean McMillian, BlueScope's traffic manager. Schilli did not call any additional witnesses. The Court also received exhibits into evidence from both parties.

Schilli made a timely Motion for Judgment as a Matter of Law, which the Court took under advisement. At the close of all evidence, and after the Parties made closing arguments, the Court retired to deliberate, and thereafter returned to open court to deliver its ruling from the bench in Plaintiffs' favor.

## II. FINDINGS OF FACT AND CONCLUSIONS OF LAW

In addition to the facts and law stipulated by the Parties (Doc. 33), the Court finds that the relevant facts as established by a preponderance of the evidence, and the law to be applied to those facts, are as follows:

1. This matter is properly before the Court pursuant to federal-question jurisdiction. 28 U.S.C. § 1331.

2. This matter involves damage sustained to commercial goods during interstate shipment pursuant to a bill of lading, and is therefore governed by the Carmack Amendment of the Interstate Commerce Act, 49 U.S.C. §14706.

3. The Carmack Amendment permits an interstate motor carrier to limit its liability by setting a nine-month claim-filing deadline in a contract. *See* 49

U.S.C. §14706(e)(1).  However, in this matter, the bill of lading on its face did not contain any claims limitation period.[2]

4. ACI had neither actual knowledge nor constructive notice of a nine-month claims-limitation period as agreed between Schilli and BlueScope, and therefore Plaintiffs' claim is not barred by a nine-month limitations period. Berryman, the president and owner of ACI, an architectural design and construction company in business since 1981, was unfamiliar with transportation industry standards regarding a cargo claims limitations period. Moreover, ACI was not aware of an agreement between BlueScope and Schilli containing a nine-month claim limitation provision.  Although not made until almost two years after the shipment in question, ACI's formal claim letter was nevertheless timely.

5. ACI purchased building materials from BlueScope for use in constructing a 31,000 square foot building for A&M.  ACI's construction contract required substantial completion of the building by the end of calendar year 2011. Construction, which began in mid-August 2011, was substantially complete by December 30, 2011, and fully completed during January 2012—except for replacement of the damaged panels.

6. On ACI's behalf, BlueScope arranged to ship the materials to ACI over six separate loads with various cargo carriers, as documented in Plaintiffs' Exhibit 13: Bills of Lading.  The damaged materials were shipped with Load

---

[2]Nor did the bill of lading reference or incorporate the transportation agreement between Schilli and BlueScope, which was the subject of Schilli's Motion for Summary Judgment.

Three and transported in interstate commerce by Schilli. The bill of lading for Load Three indicates a delivery date of August 29, 2011, and designates ACI as the Consignee.

7. Photos taken by BlueScope were admitted into evidence as Plaintiffs' Exhibits 7, 9, and 12. The photos, along with Edwards' and McMillian's testimony, establish that all of the materials shipped with Load Three were received by Shilli in good condition.

8. Materials were damaged during the course of Schilli's transportation of Load Three. Edwards' testimony that no incident occurred during transport—and that the materials were in good condition upon arrival—is contradicted by other direct and circumstantial evidence. Berryman testified that he was informed of the damaged materials on Load Three shortly after Schilli's truck arrived. Berryman arrived on the job site within seven to 10 minutes and took photographs of Load Three to document the damage. Plaintiffs' Exhibit 2, as explained by Berryman, is a photograph he took that depicts the shifted blocking material and corresponding damage to wall panels. Berryman explained why the load shift could not have been caused by the forklift that had removed some of the materials from the load prior to his arrival. No damage was noted on the bill of lading for Load Three; however, damage was noted in Edwards' "trip documents", as shown in Plaintiffs' Exhibit 4. While Edwards denies that he made the notation, the trip document was an internal document maintained at all relevant times by Edwards and/or Schilli. Although the evidence on this issue is controverted, the Court finds that the

6

        greater weight of the evidence tips in favor of finding that the damage to the wall panels occurred during transport by Schilli.

9. ACI replaced a total of 55 damaged wall panels. Fifteen new panels were ordered almost immediately. However, damage to an additional 40 panels was not discovered immediately, and replacement panels were not ordered until sometime between December of 2011 and March of 2012. The cost of the first 15 replacement wall panels and fasteners was $1,568.00. The cost of the 40 remaining replacement wall panels and fasteners was $4,807.76. ACI has failed to meet its burden to establish with sufficient specificity the amount of freight and equipment expenses that relate solely to the replacement wall panels.

10. ACI has not proved its entitlement to so-called "special" or consequential damages. Berryman testified that ACI's paramount concern was meeting its year end construction deadline. In Berryman's experience it would take six to eight weeks for new custom wall panels to be manufactured and shipped. Consequently, ACI decided to install the damaged panels out of general concern that any delays in the receipt of new wall panels would jeopardize the year-end deadline for "substantial completion" of the construction contract. More specifically, Berryman testified that delays could have interfered with pouring the interior concrete floor prior to winter temperatures, which can become too low to cure the concrete. Thus, ACI contends it was both reasonable and foreseeable to enclose the structure with the damaged wall panels—to facilitate the concrete pour and other interior work—while

waiting on new panels to arrive, at which point the damaged panels would be removed and replaced with new panels and fasteners. However, Berryman testified that Schilli was not informed of, and would have had no reason to know, the terms of ACI's construction contract with A&M; the construction completion deadline; and/or that the concrete pour would extend into the cold weather months. There is no credible evidence from which to infer that Schilli could have reasonably foreseen that ACI would complete the structure with damaged wall panels—only to later remove and replace them with new panels. To the contrary, the evidence suggests that with reasonable diligence ACI could have ordered and received all 55 replacement panels in October 2011—as it had done with the initial 15 panels—while the weather was still conducive to pouring concrete. Thus, the additional damages sought for removal and replacement labor, overhead, and profit were not reasonably foreseeable to Schilli. *See Caspe v. Acon Auto Transport, Inc.*, 658 F.2d 613, 616 (8th Cir. 1981) (finding that actual damages are allowed when they are foreseeable, and special damages are allowed when notice was given to the carrier of the possibility of injury); *Contempo Metal Furnishings Co. of Cal. v. E. Tex. Motor Freight Lines, Inc.*, 661 F.2d 761, 765 (9th Cir. 1981) ("Special damages are those that the carrier did not have reason to foresee as ordinary, natural consequences of a breach when the contract was made. . . . To recover for special damages, the plaintiff must show that the carrier had notice of the special circumstances from which such damages would flow.")*; Union Pacific R. Co. v. Beemac Trucking, LLC*,

929 F. Supp. 2d 904, 918 (D. Neb. Mar. 7, 2013) (finding that special damages are recoverable only if they were reasonably foreseeable to the carrier when it undertook to transport the goods).

11. The Court therefore finds ACI's recoverable damages to be in the total sum of $6,375.76

### III. CONCLUSION

The Court finds that Schilli received the materials in good condition from BlueScope; however, upon arrival the materials were in damaged condition, and therefore Shilli is liable for Plaintiffs' damages under the Carmack Amendment. Plaintiffs are entitled to receive $6,375.76 in compensatory damages, which represents the replacement cost of the 55 damaged panels and fasteners.

Plaintiffs filed their Motion for Costs and Pre-Judgment Interest (Doc. 47) on December 9, 2014. Schilli is directed to file its response by no later than December 17, 2014. A final Judgment will be entered following the Court's ruling on Plaintiff's Motion.

**IT IS SO ORDERED** this 10th day of December, 2014.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE